Matter of Coney Is. Preparatory Pub. Charter Sch. v New York State Educ. Dept. (2025 NY Slip Op 03374)

Matter of Coney Is. Preparatory Pub. Charter Sch. v New York State Educ. Dept.

2025 NY Slip Op 03374

Decided on June 5, 2025

Appellate Division, Third Department

Ceresia, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:June 5, 2025

CV-24-0866

[*1]In the Matter of Coney Island Preparatory Public Charter School et al., Appellants,
v
New York State Education Department et al., Respondents.

Calendar Date:April 30, 2025

Before: Pritzker, J.P., Lynch, Ceresia, McShan and Powers, JJ.

Arnold & Porter Kaye Scholer LLP, New York City (Kent A. Yalowitz of counsel), for appellants.
Letitia James, Attorney General, Albany (Jonathan D. Hitsous of counsel), for New York State Education Department and another, respondents.
Muriel Goode-Trufant, Corporation Counsel, New York City (Jonathan Schoepp-Wong of counsel), for City of New York and another, respondents.

Ceresia, J.
Appeal from a judgment of the Supreme Court (Kevin Bryant, J.), entered April 30, 2024 in Albany County, which, in a combined proceeding pursuant to CPLR article 78 and action for declaratory judgment, granted a motion by respondents New York State Education Department and Commissioner of Education to dismiss the petition/complaint.
This appeal concerns the calculation of funding for charter schools. When a student attends a charter school, that student's school district of residence pays basic tuition to the school on behalf of the student in an amount that is determined using certain statutory formulas (see Education Law § 2856 [1] [a]).[FN1] Petitioners collectively operate 73 of the 274 charter schools in New York City, while respondent New York State Education Department (hereinafter SED) computes the charter school basic tuition and respondent New York City Department of Education (hereinafter DOE) then pays that tuition for each student attending petitioners' schools.
The two formulas that were used to arrive at the charter school basic tuition for the 2023-2024 school year, which is the year that is relevant to this case, are found in Education Law § 2856 (1) (a) (ix). First, formula A obliged SED to multiply the basic tuition for 2022-2023 by the average growth of the school district's "approved operating expense" over three prior years (Education Law § 2856 [1] [a] [ix] [A]). The term "approved operating expense" is defined elsewhere in the Education Law and is comprised of a school district's total expenditures from multiple funding sources, with several enumerated exclusions (see Education Law § 3602 [1] [t]). Second, formula B required SED to divide the school district's general fund expenditures, as captured in "an electronic data file . . . published annually on May fifteenth" (hereinafter referred to as the May 15 snapshot), by the number of students in the district (Education Law § 2856 [1] [a] [ix] [B]). After performing the computations in formulas A and B, SED was compelled to use the lesser of the two results as the controlling amount of tuition.
In May 2023, SED established the charter school basic tuition for the 2023-2024 school year. When performing the formula A calculation and determining the figure to be used for the district's "approved operating expense," SED utilized the May 15 snapshot, in accordance with its longstanding practice. SED also performed the formula B computation. As between the two, formula A resulted in the lower figure, which was $18,340 per pupil, such that this was the amount that DOE was required to pay in basic tuition for the 2023-2024 school year. DOE subsequently revised some of its operating expenses due to a reduction in its transportation costs, and petitioners consequently requested that SED recalculate the basic tuition accordingly, as this revision would have resulted in an extra $23 per pupil. SED effectively denied petitioners' request and the basic tuition remained the same for that school [*2]year.
Petitioners thereafter commenced this hybrid CPLR article 78 proceeding and declaratory judgment action, alleging that SED improperly refused to redetermine the basic tuition when the district's operating expenses changed and instead wrongly insisted on employing the static May 15 snapshot within formula A. SED and respondent Commissioner of Education (hereinafter collectively referred to as the State respondents) filed an answer and motion to dismiss the petition/complaint, contending that their computation of tuition was neither arbitrary nor capricious, and that the request for declaratory relief was improper. DOE and respondent City of New York (hereinafter collectively referred to as the City respondents) moved pre-answer to dismiss, arguing, among other things, that they are not proper parties to the proceeding/action. Supreme Court granted the State respondents' motion to dismiss and ruled that the City respondents' motion was moot as a result. Petitioners appeal.
"This Court's review of an administrative determination such as the one at issue is limited to whether the determination was arbitrary and capricious, lacked a rational basis or was affected by an error of law" (Matter of Abramoski v New York State Educ. Dept., 134 AD3d 1183, 1185 [3d Dept 2015] [citations omitted], lv dismissed & denied 27 NY3d 1044 [2016]). "An action is arbitrary and capricious when it is taken without sound basis in reason or regard to the facts" (Matter of Peckham v Calogero, 12 NY3d 424, 431 [2009] [citation omitted]). When it comes to the resolution of a dispute over the proper construction of statutory language, "[w]here, as here, the interpretation of [the] statute or its application involves knowledge and understanding of underlying operational practices or entails an evaluation of factual data and inferences to be drawn therefrom, the courts regularly defer to the governmental agency charged with the responsibility for administration of the statute" (Town of Lysander v Hafner, 96 NY2d 558, 565 [2001] [internal quotation marks, emphasis and citation omitted]; see Matter of Gonzalez v Annucci, 32 NY3d 461, 471 [2018]; Matter of C.K. v Tahoe, 211 AD3d 1, 13 [3d Dept 2022]).[FN2]
In this case, deference to SED's interpretation of formula A is appropriate because, while the statute containing this formula directs the use of certain operating expense data, it does not specify the point in time when this data is to be captured, nor does it indicate how often the calculations must be performed. In answering these questions, SED's institutional knowledge of underlying operational practices became important in several respects.
With regard to the point in time when the calculations were to be carried out, SED was aware that charter school basic tuition must be paid "in six substantially equal installments each year beginning on the first business day of July and every two months thereafter" (Education Law § 2856 [1] [b]), such that it was necessary to set tuition [*3]for the 2023-2024 school year prior to July 2023. Given that SED was already required by the Legislature to produce snapshots of operating expenses on November 15, February 15 and May 15 of each school year (see Education Law § 305 [21] [b]), together with the fact that the state budget — which, historically, has often included revisions to the formulas — is not enacted until after the first two of those three dates, SED concluded that the May 15 snapshot would furnish the most appropriate data.
As far as how frequently the charter school basic tuition should be calculated, SED determined that doing so once per year in May would provide necessary stability and predictability for both school district and charter school budgets.[FN3] SED rationally rejected petitioners' argument that formula A must be continuously recalculated on a rolling basis every time a school district revises its operating expenses until the district receives final approval and payment of those expenses from SED. Preliminarily, contrary to petitioners' contention, the statute defining an "approved operating expense" does not require that it be approved or paid at any particular point in time.[FN4] In addition, petitioners' reading of the statute would lead to impractical consequences because a district's operating expenses may be revised for up to two years after the close of the academic year in which they were incurred (see Education Law § 3604 [5]), and could be approved and paid by SED even beyond that time frame, resulting in a charter school's budget for a given year fluctuating unpredictably for years into the future. Indeed, performing multiple recalculations during the ensuing years could run counter to the requirement that the tuition be paid "in six substantially equal installments" (Education Law § 2856 [1] [b]).
In light of the above, we conclude that SED had a rational basis for utilizing the May 15 snapshot in implementing formula A and did not act arbitrarily or capriciously. Accordingly, Supreme Court properly dismissed the petition/complaint in its entirety (see Matter of C.K. v Tahoe, 211 AD3d at 14).
With respect to the City respondents, we additionally note that they are not proper parties to this proceeding/action (see CPLR 1001 [a]; 1002 [b]). The complained-of conduct pertains solely to the calculation of basic tuition, in which, petitioners concede, the City respondents are uninvolved. Thus, "no factual allegation or showing has been made that the [City respondents] played a substantial role in the injury to petitioners or that the [City respondents were] primarily responsible for the determination" at issue (Matter of Board of Educ. of Roosevelt Union Free School Dist. v Board of Trustees of State Univ. of N.Y., 282 AD2d 166, 174 [3d Dept 2001] [internal quotation marks, emphasis and citations omitted]; see Matter of DeWolf v Wirenius, 229 AD3d 929, 931 [3d Dept 2024]).
Pritzker, J.P., Lynch, McShan and Powers, JJ., concur.
ORDERED that the judgment [*4]is affirmed, without costs.

Footnotes

Footnote 1: In addition to the basic tuition paid by school districts, charter schools receive funds through federal aid, grants and other sources (see Education Law § 2856 [1] [b]; [3]), which are not pertinent here.

Footnote 2: We disagree with petitioners' assertion that this case involves a matter of statutory interpretation requiring de novo review, as the question here is not merely one of "pure statutory reading and analysis, dependent only on accurate apprehension of legislative intent" (Weingarten v Board of Trustees of N.Y. City Teachers' Retirement Sys., 98 NY2d 575, 580 [2002] [internal quotation marks and citation omitted]; see Hollandale Apts. & Health Club, LLC v Bonesteel, 173 AD3d 55, 67 [3d Dept 2019]).

Footnote 3: To the extent that petitioners claim that SED made an improper policy decision to prioritize predictability over accuracy, this argument is unpreserved, as it was not raised before Supreme Court (see Matter of Spence v New York State Off. of Mental Health, 211 AD3d 1425, 1430 [3d Dept 2022]).

Footnote 4: Petitioners claim that an "approved operating expense" is one that is "paid" and "approved by the commissioner" as part of a dynamic, ongoing review process (Education Law § 3602 [1] [t]). However, petitioners misread that statutory definition. The words "paid" and "approved by the commissioner" qualify certain specific types of expenses to be included in a district's total "approved operating expense," but they do not define that term as a whole (Education Law § 3602 [1] [t]).